UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION


SAINT-TILIEN METEYEUX,

      Petitioner,

-vs-                                        Case No.  6:12-cv-415-Orl-19TBS

SECRETARY, DEPARTMENT
  OF CORRECTIONS, et al.,

      Respondents.

_____/

## ORDER

Petitioner initiated this action for habeas corpus relief pursuant to 28 U.S.C. section 2254 (Doc. No. 1).  Upon consideration of the petition, the Court ordered Respondents to show cause why the relief sought in the petition should not be granted.   Thereafter, Respondents filed a response to the petition for writ of habeas corpus in compliance with this Court's instructions and with the *Rules Governing Section 2254 Cases in the United States District Courts* (Doc. No. 13).  Petitioner filed a reply to the response (Doc. No. 17).

### I.   *Procedural History*

Petitioner was charged by information with one count of sexual battery (physically helpless) (count one) and one count of sexual activity with a 16 or 17 year old child (count two).  A jury trial was held, and Petitioner was found guilty on both counts.  The trial court

adjudicated Petitioner guilty of the crimes and sentenced him to imprisonment for a term of thirty years as to count one and to probation for a term of fifteen years as to count two. Petitioner filed a direct appeal with the Florida Fifth District Court of Appeal, which affirmed *per curiam*.

Petitioner next filed a motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850 with the state trial court, raising five claims.  The trial court entered an order denying claims one, three, four, and, five, and allowing Petitioner to amend claim two.  Petitioner filed an amended claim, and the trial court subsequently entered an order denying claim two.  Petitioner appealed the denial, and the state appellate court affirmed the denial *per curiam*.

## II.    *Legal Standards*

### A.    *Standard of Review Under the Antiterrorism Effective Death Penalty Act ("AEDPA")*

Pursuant to the AEDPA, federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

(1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  The phrase "clearly established Federal law," encompasses only the holdings of the United States Supreme Court at the time of the relevant state-court

decision.  *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

"[S]ection 2254(d)(1) provides two separate bases for reviewing state court decisions; the 'contrary to' and 'unreasonable application' clauses articulate independent considerations a federal court must consider."  *Maharaj v. Secretary for Dep't. of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005).  The meaning of the clauses was discussed by the Eleventh Circuit Court of Appeals in *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001):

> Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts.  Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

Even if the federal court concludes that the state court applied federal law incorrectly, habeas relief is appropriate only if that application was "objectively unreasonable."[1]  *Id.*

Finally, under § 2254(d)(2), a federal court may grant a writ of habeas corpus if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  A determination of a factual issue made by a state court, however, shall be presumed correct, and the habeas petitioner has

---

[1]In considering the "unreasonable application" inquiry, the Court must determine "whether the state court's application of clearly established federal law was objectively unreasonable." *Williams*, 529 U.S. at 409. Whether a state court's decision was an unreasonable application of law must be assessed in light of the record before the state court. *Holland v. Jackson*, 542 U.S. 649, 652 (2004) (*per curiam*); *cf. Bell v. Cone*, 535 U.S. 685, 697 n. 4 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).

the burden of rebutting the presumption of correctness by clear and convincing evidence. *See Parker*, 244 F.3d at 835-36; 28 U.S.C. § 2254(e)(1).

**B.      Standard for Ineffective Assistance of Counsel**

The United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance: (1) whether counsel's performance was deficient and "fell below an objective standard of reasonableness"; and (2) whether the deficient performance prejudiced the defense.[2] *Id.* at 687-88. A court must adhere to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.* at 689-90. "Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690; *Gates v. Zant*, 863 F.2d 1492, 1497 (11th Cir. 1989)

As observed by the Eleventh Circuit Court of Appeals, the test for ineffective assistance of counsel:

> has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. Courts also should at the start presume effectiveness and should always avoid second guessing with the benefit of hindsight. *Strickland* encourages reviewing courts to allow lawyers broad

---

[2]In *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993), the United States Supreme Court clarified that the prejudice prong of the test does not focus solely on mere outcome determination; rather, to establish prejudice, a criminal defendant must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable.

> discretion to represent their clients by pursuing their own strategy. We are
> not interested in grading lawyers' performances; we are interested in
> whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992) (citation omitted).  Under those

rules and presumptions, "the cases in which habeas petitioners can properly prevail on the

ground of ineffective assistance of counsel are few and far between."  *Rogers v. Zant*, 13

F.3d 384, 386 (11th Cir. 1994).

III.    *Analysis*

A.    *Claim One*

Petitioner argues that trial counsel was ineffective for failing to move for a mistrial

based on prosecutorial misconduct.  In particular, Petitioner alleges that the prosecutor

"refused to accept a stipulation to consensual sex by [Petitioner] with the victim as proof

of penetration . . . ."  *See* Doc. No. 2 at 2.  This claim was raised in Petitioner's Rule 3.850

motion and was denied because there was no basis for such a motion.

The testimony at trial revealed that the victim was living in a house belonging to her

sister and Petitioner, who was her sister's husband.  According to the victim, on at least

two occasions, Petitioner entered the victim's room, provided her with drinks that made

her dizzy, and engaged in non-consensual sexual activity with her.   The victim became

pregnant and notified the police.  Subsequently, the victim had an abortion, and DNA

testing revealed that Petitioner was the father of the fetus.

Upon his arrest, Petitioner adamantly denied engaging in sexual activity with the

victim.  In light of Petitioner's denial, there was no basis for counsel to argue for a mistrial

based on the State's alleged refusal to allow him to stipulate to the fact that he had consensual sex with the victim.

In addition, at trial, the State indicated that it "had no idea that the Defendant was going to claim all the sex was consensual." *See* App. 2, Transcript of Trial at 63-64, 81. Since the State was unaware of the alleged "consensual sex" prior to trial, counsel had no basis to argue for a mistrial.

Finally, under Florida law, the State is not obligated to accept a defendant's stipulation. *See Parker v. State*, 389 So. 2d 336 (Fla. 4th DCA 1980). In the present case, Petitioner has not explained why the State would stipulate that the sexual activity was consensual when, in fact, the State presented evidence that Petitioner drugged the victim and that she was unconscious when the sexual activity occurred.

Under the circumstances, Petitioner has failed to demonstrate that counsel acted deficiently or that he sustained prejudice. As such, there has been no showing that the state court's rejection of this claim was not contrary to, nor that it involved an unreasonable application of, clearly established Supreme Court precedent, nor that it was based upon an unreasonable determination of the facts in light of the evidence presented.

**B.    *Claim Two***

Petitioner argues that trial counsel was ineffective for failing to request that the trial court compel the attendance of the Child Protective Team ("CPT") employee who had interviewed the victim. This claim was raised in Petitioner's Rule 3.850 motion and was denied because Petitioner had not shown how the CPT employee's testimony would have

been used for impeachment purposes.

Petitioner has failed to set forth how the testimony of the CPT employee would have been beneficial to his case. Mere speculation as to the testimony an uncalled witness would have given is too uncertain. *See Gasanova v. United States,* 2007 WL 2815696, at *9 (W.D. Tex. September 6, 2007) (citations omitted) (footnotes omitted). A petitioner cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim. *Id.* In the case of an uncalled witness, at the very least the petitioner must submit an affidavit from the uncalled witness stating the testimony he or she would have given such witness had been called at trial. *Id.* To show prejudice, the petitioner must show not only that the uncalled witness's testimony would have been favorable, but also that the witness would have testified at trial. *Id.* Here, Petitioner fails to meet either prong of *Strickland* since he has not demonstrated that the testimony of this witness would have been favorable.

Consequently, the state court's rejection of this claim was not contrary to, nor did it involve an unreasonable application of, clearly established Supreme Court precedent, nor was it based upon an unreasonable determination of the facts in light of the evidence presented.

C.    *Claim Three*

Petitioner states that trial counsel was ineffective for failing to move for a mistrial based on the prosecutor's impermissible comments on his right to remain silent. This claim was raised in Petitioner's Rule 3.850 motion and was denied because the prosecutor did not

comment on Petitioner's right to remain silent.

Petitioner references the following statements made by the prosecutor during

closing argument:

> You're going to hear how the Defendant adamantly denied ever touching her.  He didn't hang out with her.  He never had sex with her.
>
> . . . .
>
> . . . For more than 45 minutes he sits with three different law enforcement officers lying, over and over and over, he never touched her.  He never had sex with her . . . .  Today is the first time he ever said, yeah, I had sex with her and it was consensual.
>
> . . . .
>
> . . .  The Defendant repeatedly denied to those law enforcement officers touching her, having sex with her . . . .

*See* App. 2, Transcript of Trial at 12, 295-96, 335.

It is apparent that the prosecutor was not commenting on Petitioner's right to

remain silent; rather, she was commenting on the discrepancy in Petitioner's allegation at

trial that the sexual activity with the victim was consensual.  *See State v. Jones*, 867 So. 2d

398, 400 (Fla. 2004) ("when determining whether a statement impermissibly comments on

the defendant's right to remain silent during trial, the court should examine the statement

in the context in which it was made.").  These were appropriate comments on the evidence

adduced during the trial and the defenses presented by Petitioner at trial.

Therefore, Petitioner has failed to demonstrate that counsel acted deficiently or that

he sustained prejudice.  As a result, there has been no showing that the state court's

rejection of this claim was contrary to, or involved an unreasonable application of, clearly

established Supreme Court precedent.  Further, the state court's determination was not

based on an unreasonable determination of the facts in light of the evidence presented.

**D.**    ***Claim Four***

Petitioner asserts that trial counsel was ineffective for failing to move for a mistrial

based on the prosecutor vouching for the credibility of the victim.  This claim was raised

in Petitioner's Rule 3.850 motion and was denied because the prosecutor did not vouch for

the credibility of the victim.

In support of this claim, Petitioner points to the following statement made by the

prosecutor during closing argument:

> Leslyne has told everyone the same thing over and over.  She's never told
> anybody she was lying.  She's been given every opportunity to tell us this
> isn't true.  Would she go through everything she's been through for a lie? No.
> People would not go through this and this system for a lie.

*See* App. 2, Transcript of Trial at 338-39.

Under Florida law, "[i]mproper bolstering occurs when the State places the prestige

of the government behind the witness or indicates that information not presented to the

jury supports the witness's testimony. *Williamson v. State*, 994 So. 2d 1000, 1013 (Fla. 2008)

(citation omitted) (quotation omitted).  When the challenged statements at issue are viewed

in their context, it is apparent that the prosecutor did not  vouch for the credibility of the

witness.  The prosecutor made these statements in reply to the defense's argument that the

victim was being untruthful.  The statements did not constitute an expression of personal

9

opinion as to the credibility of the victim, and counsel was not ineffective for failing to move for a mistrial.  Likewise, Petitioner has not demonstrated prejudice with regard to this matter.

Accordingly, there has been no showing that the state court's rejection of this claim was contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent.

**E.** **Claim Five**

Petitioner argues that trial counsel was ineffective for failing to move for a new trial based on newly discovered evidence.  This claim was raised in Petitioner's Rule 3.850 motion and was denied because the newly discovered evidence was cumulative to other evidence introduced concerning the actual age of the victim.

According to Petitioner, at sentencing, the victim's sister testified that the victim's father altered the victim's birth certificate when they came to live in the United States, which resulted in the victim actually being eighteen years old when the offenses occurred. Petitioner notes that counsel filed a motion for a new trial based on this information but that the motion was untimely.

The verdict in this case was entered on August 6, 2009, and sentencing occurred on October 1, 2009.  Petitioner's counsel filed a motion for a new trial on August 17, 2009, and on October 15, 2009.  The second motion for a new trial was based on the newly discovered evidence alleged by Petitioner in this claim.

Under Florida Rule of Criminal Procedure 3.590(a), a motion for a new trial must

be filed within ten days after the rendition of the verdict.  Therefore, the second motion for a new trial would have been untimely even if filed immediately after the sentencing.

Further, at trial, Petitioner's defense was structured around the theory that the victim was eighteen years old at the time of the offenses, and Petitioner's counsel presented evidence to support this theory.[3]  In particular, the victim's sister testified that the victim was born on December 31, 1989, making the victim eighteen years old when the crimes occurred.  *See* Appendix 2, Transcript of Trial at 225.   It is doubtful that more cumulative evidence of a discrepancy with regard to the victim's age would have changed the outcome of the trial.

Thus, Petitioner has failed to demonstrate that counsel acted deficiently or that he sustained prejudice.  As a result, there has been no showing that the state court's rejection of this claim was contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent.

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1.      The Petition for Writ of Habeas Corpus (Doc. No. 1) filed by Saint-Tilien Meteyeux is **DENIED**, and this case is **DISMISSED WITH PREJUDICE**.

2.      The Clerk of the Court shall enter judgment accordingly and is directed to

---

[3]The information alleged that the crimes occurred between May 1, 2008, and August 8, 2008.  *See* Appendix 1 at 15.

close this case.

3.     This Court should grant an application for certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  Petitioner has failed to make a substantial showing of the denial of a constitutional right.[4]  Accordingly, a Certificate of Appealability is **DENIED** in this case.

**DONE AND ORDERED** in Chambers in Orlando, Florida, this ___10th day of January, 2013.

PATRICIA C. FAWSETT, JUDGE
UNITED STATES DISTRICT COURT

_____

[4]Pursuant to Rule 11 of the *Rules Governing Section 2254 Cases In the United States District Courts*,

The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.  Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue.  If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2).  If the court denies a certificate, a party may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22.  A motion to reconsider a denial does not extend the time to appeal.

Copies to:
OrlP-2 1/10
Counsel of Record
Saint-Tilien Meteyeux